<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SHIRLEY RUTH HAY, | : | |
| | : | |
| Plaintiff, | : | Civ. No. 04-0092 (GEB) |
| | : | |
| v. | : | **MEMORANDUM OPINION** |
| | : | |
| JO ANNE B. BARNHART, | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

**<u>BROWN, Chief Judge</u>**

  This matter comes before the Court upon the appeal of plaintiff Shirley Ruth Hay ("Plaintiff") from the Commissioner of Social Security's final decision that Plaintiff was not entitled to disability benefits under the Social Security Act ("the Act"). This Court, exercising jurisdiction pursuant to 42 U.S.C. § 405(g), and having considered the parties' submissions without oral argument pursuant to Federal Rule of Civil Procedure 78, will deny Plaintiff's appeal.

**I.  BACKGROUND**

  On or about January 5, 1998, Plaintiff filed an application for Disability Insurance Benefits and Supplemental Security Income payments under Title II and XVI of the Act alleging disability due to hepatitis C, bronchitis, asthma, emphysema, and heart problems beginning October 6, 1996. Record ("R.") at 13, 390. The application was denied initially and on reconsideration. R. at 62-72.

1

Plaintiff appeared and testified for her hearing before an Administrative Law Judge ("the ALJ") on April 13, 2000. R. at 25. At the hearing, Plaintiff claimed that she was both currently working and had been working for the past 6 years. See R. at 34. She stated that at the time, she was working for about a week and a half through a temporary agency as a receptionist. R. at 30. Plaintiff testified that she could not work much longer because of exhaustion and that she would often have to rest during work. R. at 31. Plaintiff stated that prior to her receptionist job, she worked in customer service, which involved remaining seated and answering phones all day. R. at 32-33. Plaintiff claimed that she had to leave the job because she "got sick again." R. at 32.

Plaintiff testified that she worked from 1994 to 1998 for the United States Post Office. R. at 34. During the examination, the ALJ confirmed with Plaintiff that she earned $11,885 from her work at the post office in 1998. R. at 35. Plaintiff stated that this salary was a result of two to three months' work plus sick pay and vacation time. Id. During reexamination of Plaintiff by the ALJ, Plaintiff confirmed that she earned $7,000 in 1997 and $13,000 in 1996 from her work at the post office. R. at 36. Plaintiff testified that if she had been working full-time, she should have made $35,000 per year. Id. Plaintiff further stated that she never worked full-time for the post office due to her illnesses. Id. Plaintiff claimed that after her kidney was removed in 1995, she was downgraded to "light duty" job tasks. Id. This work included sitting down and pitching mail. R. at 38-39. Plaintiff testified that this job "blistered" her back. R. at 38.

Plaintiff also testified about her hepatitis C and its effects on her, including her muscle aches. R. at 51. She stated that she would have a fever around twice a week and that the muscle pains occurred every day. Id. She claimed that her muscle aches prevented her from sitting for more than an hour. R. at 51-52.

Plaintiff further stated that her hepatitis has gotten worse and that she is often tired and does not eat for days at a time. R. at 39. She also claimed that there is medication that can help, but she is unable to afford it due to her lack of insurance. R. at 39-40. Plaintiff testified that her husband left her because of her alleged disability and that she was living with her girlfriend. R. at 40. Plaintiff stated that while living at her girlfriend's house, she "could sleep through an entire day and wake up the next day" without eating or using the restroom. R. at 41. She claimed that she forced herself to eat. Id.

Plaintiff also testified that her asthma and bronchitis had worsened at the time of the hearing and that she had trouble breathing during the day. R. at 45. She stated that her trouble breathing resulted from the pollen or particles in the air and from basic activities such as talking. R. at 45-46. She further claimed that her breathing caused her trouble walking. R. at 46. According to Plaintiff, she was only capable of walking a couple of blocks at a time and had trouble walking up stairs. Id. Plaintiff also testified that she became short of breath when she was resting due to her heart palpitations, which usually occurred during her sleep. R. at 47. During questioning from the ALJ, Plaintiff testified that she had been to the emergency room for her asthma problems. R. at 48. She further stated that her doctor, Dr. Bhatia, had given her a prescription to help her breathing, but that she was unable to afford the medicine. Id. Plaintiff testified that her last "bad" asthma attack was in 1999. R. at 50.

Plaintiff further testified that after her kidney was removed, she continued to have pains on her left side. R. at 53. Plaintiff admitted that none of the doctors could find a reason for her pain. Id. She claimed that her side pains, combined with her other aches, prevented her from lifting objects. Id.

Plaintiff also testified that she was being treated for her mental health. R. at 54. Plaintiff stated that she was depressed because of her illnesses, which caused her to cry, sleep poorly, and have no appetite. Id. Plaintiff also testified that she has lost weight as a result of her depression and that she is unable to sit and socialize with her friends. R. at 55.

On September 5, 2000, Plaintiff modified her application and requested a closed period of disability for the period of April 1, 1998, to March 1, 2000. R. at 86. On or about December 29, 2000, the Social Security Administration denied Plaintiff's claim, finding that Plaintiff was not disabled. R. at 10. On or about October 21, 2001, the Appeals Council denied a request for reconsideration of this decision. R. at 4. On or about July 31, 2002, after Plaintiff had filed a complaint in this Court, the matter was remanded to the Appeals Council by consent order. R. at 455-56. On or about August 27, 2002, the Appeals Council remanded the matter back to the ALJ with instructions to evaluate Plaintiff's mental impairment and residual functional capacity. R. at 457-58.

A supplemental hearing was held on June 25, 2003. R. at 395-454. At the hearing, Plaintiff testified to the same facts as in the April 13, 2000 hearing and also withdrew her request for a closed period, alleging that she was disabled from April 1998 through the present. R. at 399, 402. Plaintiff further stated that while working for the post office, she lifted up to thirty-five pounds and walked up to thirty times per shift. R. at 408. Plaintiff also testified about her work prior to her job at the post office. Plaintiff stated that she worked as a driver for a medical transportation company. R. at 409. Plaintiff claimed that she worked six-hour days and that during those days, she would lift, push, pull, walk, and drive. R at 409-10. Prior to working at the post office, Plaintiff also testified that she had undergone about six months of training as a

bus driver for New Jersey Transit, but that she never was licensed to drive a bus. R. at 410-11.

Plaintiff also testified that after working at the post office, she worked as a teller at a bank. R. at 411-12. Plaintiff stated that after working for the bank, she worked for a temporary agency for seven months. R. at 415. Plaintiff testified that she was standing or walking 90% of the time she was working as a receptionist at the temporary agency. R. at 416. Plaintiff then stated that after her job at the temporary agency, she worked for a law firm for two weeks. Id. Plaintiff explained that she did not work there for long because the job required lifting that she could not do. R. at 417. Plaintiff testified that her last job was with ARC, a home for mentally retarded citizens. Id. Plaintiff claimed that she was supposed to watch the patients, but would sleep 60% of the time instead. R. at 417, 419.

Plaintiff stated that she had been on medication, Interferon, to help her stay awake, but that it would often make her tired. R. at 420. Plaintiff claimed that the medication gave her high fevers, chills, muscle aches, and flu-like symptoms. R. at 421. At the time of the hearing, Plaintiff testified that she was no longer on the medication. R. at 420. Plaintiff testified that in September 2002, she was hospitalized due to her asthma, hepatitis, and the effects of the medication. R. at 421. Plaintiff stated that she was again in the hospital that November for pneumonia. R. at 422. During her November visit, Plaintiff claimed that she hallucinated about her funeral. Id.

Plaintiff testified that at the time of the hearing, she also had a sleeping disorder in which she would stay up for two days straight if not on medication. R. at 426. Plaintiff also claimed that she must rest during the day, and that during the summer months, she must stay inside and rest because the pollen and dust cause her asthma to worsen. R. at 426, 431.

At the time of the hearing, Plaintiff was wearing a neck brace to protect a herniated disk. R. at 431. Plaintiff testified that she had two pinched nerves in her neck that caused her constant pain. Id. Plaintiff claimed that the pain sometimes moved down into her arms and legs, which limits her ability to sit for more than five or ten minutes. R. at 432. Plaintiff then stated that when she stands to relieve the pain, her back hurts. Id.

Plaintiff also testified in greater detail about her depression, stating that her fear of death causes her to stop eating. R. at 433. Plaintiff further claimed that she must write everything down because she can never remember appointments or important information, and that she cannot remember books even if she just read them. R. at 434. Plaintiff also testified that she does not socialize with her friends because of her depression and that she has been hospitalized for hallucinations. R. at 434-36.

Plaintiff further testified about her anxiety problems, stating that she struggles to drive without losing concentration. R. at 435. Plaintiff also stated that she is nervous every day even if she is not having a panic attack. Id. Plaintiff claimed that the anxiety attacks cause her pain and her hands to shake. R. at 435-36.

A vocational expert, Rocko Meola, testified that Plaintiff's work as a bank teller and a driver constituted substantial gainful activity ("SGA") and that her work at the law firm was light to medium level labor. R. at 423-24. Mr. Meola further testified that Plaintiff's work at the post office was SGA based on her income level. R. at 441. Moreover, Mr. Meola testified that the "light duty" work that Plaintiff alleged she performed at the post office was actually "medium" duty work. R. at 423. Mr. Meola explained that while Plaintiff did not have to lift abundantly heavy bags of mail, she was still lifting bags that weighed about 25 and 30 pounds, and therefore

6

performing "medium" duty work.  Id.  Mr. Meola also testified that Plaintiff's work at ARC could be considered SGA because the increase in mentally retarded persons admitted to the homes was increasing the number of available jobs.  R. at 444.  Mr. Meola agreed with the ALJ that if a person wanted to work for ARC, they could request a night job, like the one Plaintiff held, and that around 800 jobs would be available in northern New Jersey and 150 in Plaintiff's region.  R. at 445, 448.  He further testified that if similar jobs working with senior citizens instead of mentally retarded persons were added, the number of available jobs would increase.  R. at 444-48.

A medical expert, Dr. Hima Malhotra, testified about Plaintiff's mental state and confirmed that Plaintiff suffered from depressive disorder with anxiety.  R. at 438.  Dr. Malhotra further testified that Plaintiff's depression equaled a 12.04 on the listing because of the hallucinations and thoughts of suicide that resulted from her physical condition.  R. at 439.

On or about August 22, 2003, the ALJ found Plaintiff was not disabled.  R. at 386-93.  In doing so, the ALJ chose not to consider Dr. Malhotra's testimony because despite Plaintiff's alleged depression, her official Social Security earnings record showed that she had performed SGA since 1998.  R. at 496.  According to the record, Plaintiff earned $2,602.82 in 1999, $8,880.42 in 2000, $7,636.50 in 2001, and $12,664.80 in 2002.  Id.  On or about December 15, 2003, the Appeals Council declined to review the ALJ's decision.  R. at 380-82.

## II. DISCUSSION

### A. Standard of Review For Social Security Appeals

The Commissioner's decisions as to questions of fact are conclusive before a reviewing court if they are supported by "substantial evidence in the record." 42 U.S.C. § 405(g); Knepp v. Apfel, 204 F.3d 78, 83 (3d. Cir. 2000). "Substantial evidence" means more than "a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Plummer v. Apfel, 186 F.3d 422, 427 (3d. Cir 1999)(quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)). If the ALJ's findings of fact are supported by substantial evidence, this Court is bound by those findings, "even if [it] would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001)(citing Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)).

The Third Circuit has made it clear "that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." Kent v Schweiker, 710 F.2d 110, 114 (3d Cir 1983). The ALJ must analyze all the evidence and explain the weight he has given to probative exhibits. Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978)(internal citations omitted). As the Third Circuit has held, access to the ALJ's reasoning is indeed essential to a meaningful court review. Fargnoli, 247 F.3d at 42. Nevertheless, the district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)(citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)).

B. <u>Standard for Awarding Benefits</u>

A plaintiff may not receive benefits under the Act unless he or she first meets statutory insured status requirement. A plaintiff must be disabled, which is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is not under a disability unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives or whether a specific job vacancy exists in the immediate area in which he lives or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A).

Regulations promulgated under the Act establish a five-step process for an ALJ's evaluation of a claimant's disability. 20 C.F.R. § 404.1520 (2005). In the first step, the ALJ must determine whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is working and the work is a substantial gainful activity, his application for disability benefits is automatically denied. <u>Id.</u> If the claimant is not employed, the ALJ proceeds to step two and determines whether the claimant has a "severe impairment" or "combination of impairments." 20 C.F.R. § 404.1530(a)(4)(ii). A claimant who does not have a "severe impairment" is not disabled. <u>Id.</u> Third, if the impairment is found to be severe, the ALJ determines whether the impairment meets or is equal to those impairments listed

9

in Appendix 1 of this subpart ("the Listing").  20 C.F.R. § 404.1520(a)(4)(iii).  If so, the claimant is conclusively presumed to be disabled, and the evaluation ends.  Id.; 20 C.F.R. § 404.1520(d).

If it is determined that the impairment does not meet or equal a listed impairment, the ALJ proceeds to step four, which requires a determination of: (1) the claimant's capabilities despite limitations imposed by an impairment ("residual functioning capacity," or "RFC"); and (2) whether those limitations prevent the claimant from returning to work performed in the past.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is found capable of performing his previous work, the claimant is not disabled.  Id.  If the claimant is no longer able to perform his prior line of work, the evaluation must continue to the last step.  The fifth step requires a determination of whether the claimant is capable of adjusting to other work available in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  The ALJ must consider the RFC assessment, together with claimant's age, education and past work experience.  20 C.F.R. § 404.1520(g).  Thus, entitlement to benefits turns on a finding that the claimant is incapable of performing her past work or some other work in the national economy because of her impairments.

The application of these standards involves shifting burdens of proof.  The claimant has the burden of demonstrating both steps one and two, i.e., an absence of present employment and the existence of medically sever impairment.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).  If the claimant is unable to meet this burden, the process ends and the claimant does not receive benefits.  Id.  If the claimant carries these burdens and demonstrated that the impairments meet or equal those within the Listing, claimant has satisfied her burden of proof and is automatically entitled to benefits.  Id.  If the claimant is not conclusively disabled under the criteria set for the Listing, step three is not satisfied, and the claimant must prove "at step four that the impairment

prevents her from performing her past work." Id.  Thus, it is the claimant's duty to offer evidence of the physical and mental demands of past work and explain why she is unable to perform such work.  If the claimant meets this burden, the burden of proof then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy."  Id.  The step five analysis "can be quite fact specific."  Burnett v. Commissioner, 220 F.3d 112, 126 (3d Cir. 2000).

      C.  The ALJ's Decision Was Based Upon Substantial Evidence In the Record

Plaintiff specifically contests the ALJ's determination at step one of the sequential evaluation process that Plaintiff was and is capable of performing substantially gainful activity. Pl.'s Br. at 16.  Plaintiff characterizes her work as unsuccessful work attempts and labels her return to work as her "trial work period."  Pl.'s Br. at 23, 26.  Substantial evidence in the record, however, demonstrates that the nature of Plaintiff's various jobs supports the findings made by the ALJ.

      SGA is defined at 20 C.F.R. § 404.1571 as:

> The work, without regard to legality, that you have done during any period in which you believe you are disabled may show that you are able to work at the substantial gainful activity level.  If you are able to engage in substantial gainful activity, we will find that you are not disabled . . . Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did.  We will consider all of the medical and vocational evidence in your file to decide whether or not you have the ability to engage in substantial gainful activity.

20 C.F.R. § 404.1571.  SGA is further defined at 20 C.F.R. § 404.1572 as:

> . . . work activity that is both substantial and gainful:
>
> (a) *Substantial work activity.*  Substantial work activity is work activity that involves doing significant physical or mental activities.  Your work may be

substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.

(b) *Gainful work activity*. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

While Plaintiff argues that her work was irregular and infrequent, 20 C.F.R. § 404.1574(a)(1) states that "[g]enerally, in evaluating your work activity for substantial gainful activity purposes, our primary consideration will be the earnings you derive from the work activity." Table 1 in 20 C.F.R. § 404.1574(b)(2) gives minimum monthly earning averages used to determine whether someone has engaged in substantial gainful activity. The table provides that earnings averaging more than $500 a month between January 1990 and June 1999, more than $700 a month between July 1999 and December 2000, more than $740 a month in 2001 and more than $780 a month in 2002, "ordinarily show that a claimant has engaged in [SGA]." R. at 391. Plaintiff's Social Security earnings record reflects her annual earnings. According to 20 C.F.R. § 404.1574a(c), "if there is a significant change in your work pattern or earnings during the period of work requiring evaluation, we will average your earnings over each separate period of work to determine if any of your work efforts were substantial gainful activity." Dividing Plaintiff's annual earnings by twelve months, Plaintiff averaged monthly earnings of $990 in 1998, $217 in 1999, $740 in 2000, $636 in 2001, and $1,055 in 2002. Although the ALJ makes an inacurrate statement that "the earnings realized by the claimant from April 1998 to October 2002 are above the amount which strictly constitutes 'substantial gainful activity'," Plaintiff did receive earnings that exceeded the SGA earnings level in three of the five years. R. at 391. Therefore, Plaintiff's work constituted SGA for 1998, 2000, and 2002 because her monthly

earnings during those years exceeded the SGA earnings requirements.

For 1999 and 2001, the ALJ appears to have looked to 20 C.F.R. § 404.1574(b)(6)(ii), which states that "if your average monthly earnings are equal to or less than the amounts determined under paragraph (b)(2) of this section, we will generally not consider other information in addition to your earnings unless there is evidence indicating that you may be engaging in substantial gainful activity . . . ." Here, although Plaintiff's monthly earnings in 1999 and 2001 were below the threshold levels, there is evidence indicating that she engaged in SGA during those years. In particular, the ALJ referred to Mr. Meola's testimony about Plaintiff's level of performance in the jobs that she held during those years to find that she had engaged in SGA. R. at 392. Mr. Meola testified that Plaintiff's work as a bank teller, driver, law firm receptionist, and postal worker all constituted SGA because much of the work was "medium duty" work. R. at 423-24. Moreover, Mr. Meola testified that the "light duty" work that Plaintiff alleged she performed at the post office was actually "medium" duty work because although she was not lifting mail sacks between 50-100 pounds, she was still lifting sacks between 25-30 pounds on a regular basis. R. at 423.

Plaintiff also argues that while her job at ARC satisfied the salary and labor level requirements of SGA, it did not satisfy the requirement that there be a substantial number of the jobs available in the workforce. Pl.'s Br. at 22. Mr. Meola testified, however, that such work was available in her region and therefore constituted SGA. R. at 444; see also, C.F.R. § 404.1573(c). Mr. Meola presented statistics showing that due to an increase in mentally retarded persons and similar care for the elderly, more than 800 jobs would be available in northern New Jersey. R. at 444, 448.

13

Plaintiff further argues that for the years 1999 and 2001, her earnings were below the SGA level because her work constituted unsuccessful work attempts. Pl. Br. at 23. According to 20 C.F.R. § 404.1574(c), an unsuccessful work attempt is one in which:

> after working for a period of 6 months or less, your impairment forced you to stop working or to reduce the amount of work you do so that your earnings from such work fall below the substantial gainful activity earnings level in paragraph (b)(2) of this section, and you meet the conditions described in paragraphs (c)(2), (3), (4), and (5), of this section.

20 C.F.R. § 404.1574(c). In 1999, Plaintiff quit her job at the post office after almost five years. R. at 411. Later that year, she went to work as a teller at a bank for what she testified to be around five or six months. Id. If Plaintiff is claiming that her work as a teller constituted an unsuccessful work attempt, then it must satisfy 20 C.F.R. § 404.1574(c)(4), which requires that:

> (i)  You were frequently absent from work because of your impairment;
>
> (ii)  Your work was unsatisfactory because of your impairment;
>
> (iii)  You worked during a period of temporary remission of your impairment; or
>
> (iv)  You worked under special conditions . . . .

20 C.F.R. § 404.1574(c)(4). Plaintiff did not testify to any of these problems during her work at the bank.

Plaintiff testified that, in 2001, she began to work at ARC mid-year and continued to work there until mid-2002. R. at 417. Therefore, Plaintiff's work in 2001, although below the SGA requirement, did not constitute an unsuccessful work attempt because she remained at her job for over six months.

Finally, Plaintiff argues that her work in 1999 and 2001 constituted her "trial work period" and, therefore, satisfies the requirements for SGA. Pl.'s Br. at 26. According to 20

14

C.F.R. § 404.1592, a person is allowed a "trial work period" if he or she is entitled to disability insurance benefits. 20 C.F.R. § 404.1592(d)(1). As Defendant points out, "the Commissioner promulgated regulations setting forth [the policy that the beneficiary must be entitled to Disability Insurance], and those regulations provide that an individual is not entitled to a trial work period if she performs work demonstrating the inability to engage in [SGA] within 12 months of the onset of the impairment(s) . . . ." Def.'s Br. at 9. The Supreme Court has noted that in order for a claimant to be eligible for a trial work period, she must first have had a disability determination or decision of her case. Barnhart v. Walton, 535 U.S. 212, 223 (2002). Plaintiff never received a final determination that she was disabled and is, therefore not entitled to a trial work period.

In finding that Plaintiff engaged in SGA, the ALJ discussed the evidence concerning her employment history, including Plaintiff's testimony and her earnings record. R. at 393. On this basis, the ALJ reasonably concluded that Plaintiff's testimony to her inability to work could not be accepted as credible. Accordingly, the Court finds that the ALJ rendered a decision based on substantial evidence in the record and Plaintiff's appeal is denied.

### III. CONCLUSION

For the reasons stated herein, Plaintiff's appeal is denied. An appropriate form of order accompanies this Memorandum Opinion.

Dated: August 3, 2006

                                                      s/ Garrett E. Brown, Jr.
                                                     GARRETT E. BROWN, JR., U.S.D.J.